UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NEAL GIRALDI and ALLEN PILBEAM,

                      Plaintiffs,

    v.                                        No. 04-CV-877
                                                            (FJS/DRH)

BOARD OF PAROLE, State of New
York

                      Defendant.

---

**APPEARANCES:**                              **OF COUNSEL:**

NEAL GIRALDI
No. 75-B-1049
Plaintiff Pro Se
Fishkill Correctional Facility
Post Office Box 1245
Beacon, New York 12508

ALLEN PILBEAM
No. 72-C-0022
Plaintiff Pro Se
Mid-State Correctional Facility
Post Office Box 216
Marcy, New York 13403

HON. ANDREW M. CUOMO              MICHAEL G. McCARTIN, ESQ.
Attorney General for the                    Assistant Attorney General
 State of New York
Attorney for State Defendant
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

Plaintiffs pro se Neal Giraldi ("Giraldi") and Allen Pilbeam ("Pilbeam"), both inmates

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

in the custody of the New York State Department of Correctional Services (DOCS)for over thirty-five years, bring this action pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and § 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, against the New York State Board of Parole ("Parole Board").  Am. Compl. (Docket No. 6).  Plaintiffs allege that the Parole Board has discriminated against them in denying parole and related matters because plaintiffs suffered from mental illnesses exacerbated by drug use at the time of the crimes for which they are incarcerated.  Am. Compl.  Presently pending is the Parole Board's motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Docket No. 58.  Plaintiffs' oppose the motion and seek an order compelling further discovery.  Docket No. 63.  For the following reasons, it is recommended that the Parole Board's motion be granted and plaintiffs' motion be denied.

## I. Background

The facts are related in the light most favorable to plaintiffs as the non-moving parties.  See subsection II(A) infra.

### A. Neal Giraldi

On January 17, 1974, after ingesting LSD, Giraldi Went to visit his girlfriend at the home of her employer.  Docket No. 58-8 at 4; Docket No. 58-9 at 4; Docket No. 58-10 at 2-3; Docket No. 58-14 at 4-5.  Upon arriving at the residence, a struggle ensued between Giraldi and the employer concluding with Giraldi stabbing both the employer and her five-year old, disabled son.  Docket No. 58-8 at 4-5, 20; Docket No. 58-9 at 4; Docket No. 58-10 at 3, 9; Docket No. 58-12 at 3; Docket No. 58-13 at 2; Docket No. 58-14 at .  The employer

died from the multiple stab wounds to her chest and torso.  Docket No. 58-7 at 1; Docket No. 58-8 at 3; Docket No. 58-9 at 2; Docket No. 58-11 at 1; Docket No. 58-13 at 1; Docket No. 58-14 at 7-8, 14.  Her son survived with a laceration to his leg and was found harnessed to his bed.  Docket No. 58-7 at 1; Docket No. 58-8 at 3, 20; Docket No. 58-9 at 2; Docket No. 58-11 at 1; Docket No. 58-13 at 1; Docket No. 58-14 at 7.  Giraldi was convicted of murder and related offenses and was sentenced to an aggregate term of twenty-five years to life in prison.[2]  See generally Am. Compl. ¶ 5.

Giraldi was first eligible for parole November 11, 1998.  Docket Nos. 58-7-8.  During the interview process, Giraldi disclosed that since beginning his sentence, he had been disciplined nineteen times between 1976 until 1982 and that, since 1992, he had been disciplined six more times, four of which were for possession of marijuana.[3]  Docket No. 58-7 at 3.  Giraldi was denied parole "based upon the serious nature of the circumstances of [the] present offense," his "extensive drug history . . , [and drug use while incarcerated] between 1992 and 1997."  Docket No. 58-8 at 20.  The Parole Board found that such "factors demonstrate[d] that [Giraldi] present[ed] a serious threat to community safety and welfare . . . ."  Id.

Giraldi has unsuccessfully reapplied for parole on five more occasions in 2000, 2002, 2004, 2006, and 2008.  Docket Nos. 58-9-15; Giraldi Dep. (Docket No. 58-4) at 43.  He was

---

[2] During the trial, Giraldi defended claiming that "he suffered from a transient 'toxic psychosis' resulting from the confluence of his pre-existing mental illness [of chronic, low-grade depression] and his ingestion of a power hallucinogen, LSD-25."  Am. Compl. ¶¶ 7-8.

[3] During his deposition, Giraldi noted that he used marijuana many other times in addition to those instances for which he was disciplined.  Giraldi Dep. (Docket No. 58-4) at 13-14.

denied parole in 2000 because his actions in stabbing the victim in front of her five-year old son "showed no respect for human life." Docket No. 58-10 at 9. Giraldi was again denied parole in 2002 because, despite his record in programs, "[t]he immense risk [he] pose[d] to public safety preclude[d his] release to [the] community . . . ." Docket No. 58-12 at 9. In 2004, Giraldi was denied parole because stabbing the "victim about the chest and torso, penetrating her heart and other organs," in front of and in addition to stabbing her son, constituted a "serious" offense which was further exacerbated by Giraldi's continued drug abuse while incarcerated. Docket No. 58-14 at 14.[4]

During his incarceration, Giraldi has retained an "acceptable disciplinary [record] and program participation – including completion of a supervised drug rehabilitation program" and an advanced degree. Am. Compl. ¶ 12. Since 1998, Giraldi has been "repeatedly" examined by state mental health experts, each "conclud[ing] that Giraldi has no current mental illness and is not violent or dangerous." Id. ¶ 11; see also Giraldi Dep. at 25-26 (explaining that since 1980, Giraldi has not required medical treatment for a mental health ailment). Additionally, Giraldi testified that he is able independently to attend to his daily hygiene, perform tasks, learn, ambulate, and communicate. Giraldi Dep. at 26-27. Although he invoked his Fifth Amendment rights in refusing to discuss the details of the crime, Giraldi testified that it was possible that he was repeatedly denied parole because the Parole Board was offended by the heinous nature of his crime. Id. at 37, 39-44.

---

[4] Giraldi claims that he ceased using drugs in prison in February 2003. Giraldi Dep. at 14. However, he was disciplined again for drug use after 2004. Docket No. 58-13 at 2.

4

## B. Allen Pilbeam

In February 1971, Pilbeam and at least two others conspired to rob two retail store employees while the employees walked to the bank to deposit the store's proceeds to acquire money to purchase drugs.  Docket No. 58-15 at 4; Docket No. 58-16 at 3, 21; Docket No. 58-20 at 3-4; Docket No. 58-22 at 3-4; Docket No. 58-24 at 4  Pilbeam, sitting in a stolen vehicle, fired a rifle,[5], killing a seventeen year old employee while the other employee dropped the deposits which were grabbed by one of Pilbeam's accomplices. Docket No. 58-15 at 2; Docket No. 58-16 at 20; Docket No. 58-10 at 4; Docket No. 58-22 at 5-6; Docket No. 58-24 at 3, 4, 6-7.  On February 24, 1971, Pilbeam was convicted of felony murder and related offenses and was sentenced to an aggregate term of twenty-vive years to life in prison.[6]  Am. Compl. ¶ 21.

Pilbeam became eligible for parole in December 1995.  Docket Nos. 58-15-58-16. After an extensive interview, parole was denied by a majority vote,[7] relying on the "unprovoked and inexplicable shooting . . . and the rather detached manner in which [Pilbeam] appear[ed] to relate to that death" to conclude that release "would be inappropriate and . . . would serve to deprecate the magnitude of [the] offense in the eyes

---

[5] Despite claimed amnesia about the events surrounding the crime, Pilbeam repeatedly admitted to firing the rifle which killed the victim.  Docket No. 58-15 at 4; Docket No. 58-16 at 3, 13, 15-16, 20, 21; Docket No. 58-22 at 5; Docket No. 58-23 at 5.

[6] During his trial, Pilbeam attempted to justify his actions by claiming that he was "suffer[ing] from a 'toxic psychosis' resulting from the confluence of his pre-existing mental illness [of chronic undifferentiated schizophrenia] and his ingestion of several powerful hallucinogenic street drugs . . . ." Am. Compl. ¶ 23-24.

[7] One of the three Commissioners dissented stating that Pilbeam had "excelled in his program participation and present[ed] with realistic goals for community release . . . ." Docket No. 58-16 at 29-30.

5

of the community and . . . undermine respect for the law." Docket No. 58-16 at 29.

Pilbeam has unsuccessfully reapplied for parole on at least four additional occasions. Docket Nos. 58-17-58-25. In 1999, parole was denied due to the seriousness of the crime of conviction and the senseless, unprovoked, and inexplicable murder of the victim. Docket No. 58-18 at 11. Two years later, parole was again denied because the Parole Board found that "there [wa]s a reasonable probability that [Pilbeam] would not live and remain at liberty without violating the law," and that his "release at this time [would be] incompatible with the welfare and safety of the community" given the seriousness of his crimes. Docket No. 58-20 at 9. The Parole Board again denied parole in 2001 given that Pilbeam's "most vicious and violent act was carried out with no consideration or care for this defenseless and unsuspecting victim," and was unprovoked and unnecessary for the robbery. Docket No. 58-22 at 12. Pilbearm's parole was denied in 2003 due to the heinousness of the crime and the tragedy of the victim's senseless and unprovoked death compounded by Pilbeam's disciplinary actions since his last Parole Board appearance. Docket No. 58-24 at 8.

During his incarceration, Pilbeam has achieved "an excellent disciplinary and program record," including completion of drug rehabilitation and other therapeutic programs, a master's degree and acceptance in additional graduate-level programs, and successful work placements such as a paralegal in the jail. Am. Compl. ¶ 28. Since 1994, Pilbeam has been examined by mental health experts on five occasions with "no evidence of current mental illness, . . . substance abuse, . . . [or] violent conduct or dangerousness." Id. ¶ 30; see also Pilbeam Dep. (Docket No. 58-5) at 18-19 (explaining that while he saw a psychiatrist a few times, he had not suffered from any mental illness since the time of his

6

arrest). Additionally, Pilbeam testified that he was able independently to attend to his daily hygiene, perform tasks, learn, ambulate, and communicate. Pilbeam Dep. at 19-20. Although assertedly unable to recall any of the events surrounding the crime, Pilbeam nevertheless testified that it was possible that he was repeatedly denied parole because the Parole Board was offended by the heinous nature of his crime. Pilbeam Dep. at 47-48.

## II. Discussion

Plaintiffs allege that the Parole Board deliberately excluded them from the parole release program because of their prior histories of mental health afflictions and drug addiction. Plaintiffs also contend that they were unable properly to answer the Parole Board's present motion because (1) they were not provided with all discovery materials and (2) an unnamed DOCS corrections officer interfered with the filing of the present action.[8] The Parole Board claims that (1) plaintiffs do not currently suffer from a disability and the ADA and RA are thus are inapplicable, (2) the Parole Board made an individualized judgment on each parole decision, and (3) to the extent that a disability was considered in determining whether to grant parole, it was not the sole reason for which parole was denied.

---

[8] If an unnamed third party interfered with either plaintiff's right of access to the courts, that plaintiff is entitled to bring a separate action against that individual pursuant to 42 U.S.C. § 1983. See Bourdon v. Loughren, 386 F.3d 88, 92 (2d Cir. 2004). However, the unnamed party is neither named in this action nor, does it appear, associated with the Parole Board. Furthermore, plaintiffs' allegation appears unrelated to the present case and need not be further addressed. It is further noted, though, that the Parole Board has submitted an affidavit from the third party stating that the allegedly stolen legal information was being inappropriately stored at the facility's law library in contravention of facility rules and regulations and that the officer allowed Pilbeam to send all of this material, including "25 banker's boxes full of legal papers, books, and tapes, etc.", home with one of Pilbeam's visitors, a Mrs. Frances Simpson. Tanoury Decl. (Docket No. 66-2) ¶¶ 4-5 & Ex. A (authorization form identifying twenty-five boxes and signed by Pilbeam and Simpson). Pilbeam's allegations of theft refuted by the record

7

**A. Legal Standard**

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute

8

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### B. Plaintiffs' Claims

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of . . . a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II applies to state inmates. Docket No. 34; Giraldi v. Bd. of Parole, No. 04-CV-877 (FJS/DRH), 2008 WL 907321, at *5 (N.D.N.Y. Mar. 31, 2008). To state a claim under the ADA, an inmate must demonstrate that

> (1) he or she is a "qualified individual with a disability"; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) [the facility that] provides the service, program or activity is a public entity.

Clarkson v. Coughlin, 898 F. Supp. 1019, 1037 (S.D.N.Y. 1995); 42 U.S.C. § 12132.

Similarly, the RA protects any "qualified individual with a disability . . . [from] be[ing] excluded from the participation in, . . . [or] denied the benefits of," any federally funded program "solely by reason of his or her disability . . . ." 29 U.S.C. § 794(a); see also Clarkson, 898 F. Supp. at 1037-38 ("The requirements for stating a claim under the ADA are virtually identical to those under § 504 of the Rehabilitation Act"); Robinson v. Burlington County Bd. of Soc. Servs., No. 07-CV-2717 (NLH), 2008 WL 4371765, at *6 (D. N.J. Sept. 18, 2008) ("Given the similar language in the ADA and RA statutes, the analysis under the ADA is the same as the analysis under the RA.") (citations omitted).

As to the first element. person is an individual with a qualified disability if "(A) a physical or mental impairment . . . substantially limits one or more of the major life activities of such individual, (B) [there is] a record of such an impairment, or (C) [the individual is] being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). If a plaintiff fails to identify the specific activity limited by the impairment and fails to allege that it constitutes a major life activity, the ADA claim must be dismissed. Reeves v. Johnson Controls World Servs., 140 F.3d 144, 153-54 (2d Cir.1998).

"Drug addiction that substantially limits one or more major life activities is a recognized disability under the ADA." Thompson v. Davis, 295 F.3d 890, 896 (9th Cir. 2002) (citing 28 C.F.R. § 35.104 (4)(1)(i)(A)(ii)). However, even if a plaintiff has a history of drug addiction, the statutory language "does not categorically bar a state parole board from making an individualized assessment of the future dangerousness of an inmate by taking into account the inmate's disability." Thompson, 295 F. 3d at 898 n.4. The only action that is strictly prohibited is "categorically exclud[ing] a class of disabled people[, such as former drug addicts] from consideration . . . because of their disabilities[, namely a history of drug addiction.]" Id. at 898. This view is premised on the fact that a history of drug use often "leads one to a propensity to commit crime[s] . . . [which is] relevant in assessing whether that individual is qualified for parole." Id. Thus, a "parole board . . . does have legitimate penological interests in considering . . . substance abuse backgrounds during the individualized inquiry for parole suitability," and inmates are only guaranteed the right to "an individualized assessment of the threat they pose to the community . . . ." Id.

Assuming without deciding, that plaintiffs are qualified individuals suffering from a disability under the ADA and RA, they have failed to prove that their disabilities substantially

10

impacted their major life activities or that they were perceived by defendants as suffering from a disability. Both plaintiffs asserted that they were no longer suffering from mental illnesses or drug addiction and could function independently. Giraldi Dep. at 17, 25-27; Pilbeam Dep. 12-14, 18-20. Additionally, the attainment of advanced degrees by both plaintiffs demonstrates that they could successfully engage in learning. Am. Compl. ¶¶12, 28. Furthermore, plaintiffs assert only conclusory allegations that the Parole Board viewed them as suffering from mental health and drug addiction disabilities. The record otherwise refutes these claims including plaintiffs' own deposition testimony and various state mental health expert reports. Additionally, even assuming that plaintiffs satisfied the aforementioned criteria, the record does not support any contention that their disabilities were significant factors for the denial of parole or that they were denied individualized inquiries upon which the parole decisions were made.

In Giraldi's case, the Parole Board continually cited the heinous nature of his crime in their parole denials, focusing on the gravity and brutality of Giraldi's actions, the fact that the murder victim was killed in the presence of her disabled, five year old son, and that her son was also stabbed during the crime. Docket No. 58-8 at 20; Docket No. 58-10 at 9; Docket No. 58-12 at 9; Docket No. 58-14 at 14. To the extent that Giraldi's drug abuse history was considered, it was made relevant by Giraldi's continued abuse while incarcerated and the frequency of that abuse. Docket No. 58-7 at 3; Giraldi Dep. at 13-14. This record of disciplinary infractions and drug abuse while incarcerated was an important factor in the Parole Board's determination whether the drug use would continue if he was released and if the attendant danger to the community and propensity to commit crimes would remain unacceptably high.

11

The reasons given for Pilbeam's parole denials are similar.  The Parole Board repeatedly cited the brutality of his crime as (1) the shooting of a defenseless teenage victim was unnecessary to the robbery and unprovoked and (2) Pilbeam was solely culpable for the senseless murder.  Docket No. 58-16 at 29; Docket No. 58-18 at 11; Docket No. 58-20 at 9; Docket No. 58-22 at 12; Docket No. 58-24 at 8.  Additionally, from the first Parole Board hearing on, it is clear that the Parole Board was extremely disturbed by Pilbeam's detached and seemingly unrepentant attitude towards the murder.  Docket No. 58-16 at 8-13, 20-23.

Both plaintiffs conceded that it was entirely possible that their applications for parole may have been denied due to the facts and circumstances surrounding their crimes and not due to their alleged disabilities.  Giraldi Dep. at 37, 39-44; Pilbeam Dep. at 47-48.  Even construing the record in the light most favorable to plaintiffs, there exists no evidence to support the conclusion that the Parole Board denied parole to either plaintiff because of any history of drug abuse.  Accordingly, the Parole Board's motion for summary judgment should be granted on this ground.

### C. Plaintiffs' Inability to Respond to Defendants' Motion

On May 5, 2008, a pretrial scheduling order was filed setting a discovery deadline of September 30, 2008 and a deadline for motions to compel of October 30, 2008.  Docket No. 37.  Plaintiffs timely filed a motion to compel on August 5, 2008.  Docket No. 38.  By a Decision and Order dated October 16, 2008, the motion was granted in part and denied in part.  Docket No. 53.  The Parole Board complied with the order sending plaintiffs two boxes of discovery materials on December 12 and16, 2008 respectively.  Docket Nos. 64-2-

12

3. Plaintiffs never objected to the October 16 order or to the discovery provided by defendants in December. On February 24, 2009, the Parole Board filed the instant motion. Docket No. 58. Plaintiffs initially failed to respond, were granted an extension by the Court sua sponte, and then filed a response seeking a postponement of the motion and an extension of the discovery deadline. Docket No. 63.

Pursuant to the Federal Rules, "[s]hould it appear . . . that the party [opposing a motion for summary judgment] cannot . . . present . . . facts essential to justify the party's opposition, the court may . . . order a continuance to permit . . . [further] discovery . . . ." Fed. R. Civ. P. 56(f). In order to receive additional discovery, an affidavit must be filed indicating "(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." Cusamano v. Sobek, 604 F. Supp. 2d 416, 505 (N.D.N.Y. 2009) (citations omitted).

In this case, plaintiffs have failed to demonstrate any of these requirements. Plaintiffs state only general and conclusory allegations in their affidavit, failing to identify what facts they are seeking besides vague requests for "all the records, documents and files concerning parole release policy, standards, and rules in general, as well as all records, documents and files concerning plaintiffs' consideration for participation in defendant's parole release program." Docket No. 63 ¶ 13. Additionally, plaintiffs only continue to state that such records are essential in proving the "long-standing policy or practice of discriminating against state prisoners who have a history of mental illness . . . ." Id. ¶ 14. These statements represent, at best, a "mere hope that further evidence may develop to create a genuine issue of fact . . . ." Cusamano, 604 F. Supp. 2d at 505.

13

Additionally, the deadline for filing motions to compel expired on October 30, 2008. Plaintiffs made such a motion prior to the deadline, made no objection to the ruling on that motion, and fuled no further motion to compel before the instant motion was filed. Plaintiffs did not raise their present request until after the first deadline for their response to the Parole Board's motion had passed and well after the deadline had passed for motion to compel. Plaintiffs offer no viable explanation for this failure or descriptions of any actions they took to obtain whatever additional discovery they required in addition to that previously obtained in December 2008.

Furthermore, "[c]ourts possess extensive power to regulate discover and enforce their scheduling orders . . . ." Convolve, Inc. v. Compaq Comp. Corp., No. 00-CV-5141 (GBD/JCF), 2008 WL 5203675, at *2 (S.D.N.Y. Dec. 10, 2008); see also N.D.N.Y.L.R. 16.1(f) ("The Court shall strictly enforce any deadlines that it established in any case management order[, including scheduling orders], and the Court shall not modify these . . . except upon a showing of good cause."). Plaintiffs failed to comply with the scheduling order which terminated discovery and motions to compel months earlier. Additionally, even viewing the facts in the light most favorable to plaintiffs, no good cause has been proffered either for plaintiffs' delay in making this request or would establish good cause for extending the time for the request. Given plaintiffs' failure to meet the requirements of Rule 56(f) or to comply with the scheduling order, plaintiffs' request to compel discovery is denied.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that the Parole Board's motion for summary judgment (Docket No. 58) be **GRANTED** and that judgment be entered

for the Parole Board on all claims; and

**IT IS ORDERED** that plaintiffs' motion to compel discovery (Docket No. 63) is **DENIED** in all respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Secretary of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: July 20, 2009
         Albany, New York

*David R. Homer*
United States Magistrate Judge