UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**NEAL GIRALDI and ALLEN PILBEAM,**

                                      **Plaintiffs,**

                        **v.**                               **9:04-CV-877**
                                                                  **(FJS/DRH)**

**NEW YORK STATE BOARD OF PAROLE,**

                                        **Defendant.**

---

**APPEARANCES**                                             **OF COUNSEL**

**NEAL GIRALDI**
**75-B-1049**
Fishkill Correctional Facility
P.O. Box 1245
Beacon, New York 12508
Plaintiff *pro se*

**ALLEN PILBEAM**
**72-C-0022**
Mid-State Correctional Facility
P.O. Box 216
Marcy, New York 13403
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**          **MICHAEL G. McCARTIN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224-0341
Attorneys for Defendant

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

    On August 28, 2003, Plaintiffs Giraldi and Pilbeam brought this action pursuant to Title

II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and § 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, against Defendant New York State Board of Parole.[1]  Plaintiffs allege that Defendant discriminated against them in denying parole by impermissibly basing that denial on alleged disabilities.

A.     **Plaintiff Neal Giraldi**

On July 11, 1975, Plaintiff Giraldi was convicted of murder and related offenses and was sentenced to an aggregate term of twenty-five years to life in prison.  *See* Amended Complaint at ¶ 5.

Plaintiff Giraldi was first eligible for parole on November 11, 1998.  *See* Dkt. Nos. 58-7, 8.  During the interview process, he disclosed that, since beginning his sentence, he had been disciplined nineteen times between 1976 until 1982 and that, since 1992, he had been disciplined six more times, four of which were for possession of marijuana.  *See* Dkt. No. 58-7 at 3.  Defendant denied Plaintiff Giraldi parole "based upon the serious nature of the circumstances of [the] present offense," his "extensive drug history . . . , [and drug use while incarcerated] between 1992 and 1997."  *See* Dkt. No. 58-8 at 20.  Defendant found that such "factors demonstrate[d] that [Giraldi] present[ed] a serious threat to community safety and welfare. . . ." *See id.*

Plaintiff Giraldi has unsuccessfully reapplied for parole on five more occasions in 2000, 2002, 2004, 2006, and 2008.  *See* Dkt. Nos. 58-9-15; Transcript of Deposition of Neal Giraldi

---

[1] Plaintiffs originally filed this case in the Southern District of New York; that court transferred the matter to this Court on July 12, 2004.  *See* Dkt. No. 1.  Plaintiffs filed an amended complaint on July 22, 2004.  *See* Dkt. No. 6.

dated October 8, 2008 ("Giraldi Tr."), at 43.  Defendant denied him parole in 2000 because his actions in stabbing the victim in front of her five-year-old son "showed no respect for human life."  *See* Dkt. No. 58-10 at 9.  Defendant again denied him parole in 2002 because, despite his record in programs, "[t]he immense risk [he] pose[d] to public safety preclude[d his] release to [the] community. . . ."  *See* Dkt. No. 58-12 at 9.  In 2004, Defendant denied him parole because stabbing the "victim about the chest and torso, penetrating her heart and other organs," in front of and in addition to stabbing her son, constituted a "serious" offense which was further exacerbated by Plaintiff Giraldi's continued drug abuse while incarcerated.  *See* Dkt. No. 58-14 at 14.

During his incarceration, Plaintiff Giraldi has retained an "acceptable disciplinary [record] and program participation – including completion of a supervised drug rehabilitation program" and an advanced degree.  *See* Amended Complaint at ¶ 12.  Since 1998, state mental health experts have "repeatedly" examined Plaintiff Giraldi, each having "conclud[ed] that Giraldi has no current mental illness and is not violent or dangerous."  *See id.* at ¶ 11; *see also* Giraldi Tr. at 25-26 (explaining that, since 1980, Plaintiff Giraldi has not required medical treatment for a mental health ailment).  Additionally, Plaintiff Giraldi testified that he was able independently to attend to his daily hygiene, perform tasks, learn, ambulate, and communicate.  *See* Giraldi Tr. at 26-27.  Although he invoked his Fifth Amendment rights in refusing to discuss the details of the crime, Plaintiff Giraldi testified that it was possible that Defendant repeatedly denied him parole because Defendant was offended by the heinous nature of his crime.  *See id.* at 37, 39-44.

**B.     Plaintiff Allen Pilbeam**

On February 24, 1971, Plaintiff Pilbeam was convicted of felony murder and related offenses and was sentenced to an aggregate term of twenty-five years to life in prison. *See* Amended Complaint at ¶ 21.

Plaintiff Pilbeam became eligible for parole in December of 1995. *See* Dkt. Nos. 58-15, 16. After an extensive interview, Defendant denied him parole by a majority vote, relying on the "unprovoked and inexplicable shooting . . . and the rather detached manner in which [Plaintiff Pilbeam] appear[ed] to relate to that death" to conclude that release "would be inappropriate and . . . would serve to deprecate the magnitude of [the] offense in the eyes of the community and . . . undermine respect for the law." *See* Dkt. No. 58-16 at 29.

Plaintiff Pilbeam has unsuccessfully reapplied for parole on at least four additional occasions. *See* Dkt. Nos. 58-17-25. In 1999, Defendant denied him parole due to the seriousness of the crime of conviction and the senseless, unprovoked, and inexplicable murder of the victim. *See* Dkt. No. 58-18 at 11. Two years later, Defendant denied him parole because Defendant found that "there [wa]s a reasonable probability that [Plaintiff Pilbeam] would not live and remain at liberty without violating the law" and that his "release at this time [would be] incompatible with the welfare and safety of the community" given the seriousness of his crimes. *See* Dkt. No. 58-20 at 9. Defendant again denied him parole in 2001 because his "most vicious and violent act was carried out with no consideration or care for this defenseless and unsuspecting victim" and was unprovoked and unnecessary for the robbery. *See* Dkt. No. 58-22 at 12. Defendant denied Plaintiff Pilbeam parole in 2003 due to the heinousness of the crime and

the tragedy of the victim's senseless and unprovoked death compounded by Plaintiff Pilbeam's disciplinary actions since his last Parole Board appearance. *See* Dkt. No. 58-24 at 8.

## II. BACKGROUND

Defendant filed a motion for summary judgment. In support of that motion, Defendant claimed that (1) Plaintiffs did not currently suffer from a disability and that the ADA and RA were thus inapplicable; (2) it made an individualized judgment on each parole decision; and (3), to the extent that it considered a disability in determining whether to grant parole, such disability was not the sole reason for which Defendant denied Plaintiffs parole.

Magistrate Judge Homer recommended that the Court grant the motion, explaining that summary judgment was appropriate because there exists no evidence to support the conclusion that Defendant denied parole to either Plaintiff because of any history of drug abuse. *See* Dkt. No. 67 at 12. Further, Magistrate Judge Homer denied Plaintiffs' request for Rule 56(f) relief because Plaintiffs failed to comply with the scheduling orders and proffered no good cause to extend the discovery deadline.

On August 5, 2009, Plaintiffs objected to this recommendation, alleging that (1) they are entitled to additional discovery to prove that their disability was the reason Defendant denied them parole; (2) they do not have to establish that their disability was the "sole" reason for the denial; and (3) the fact that they are no longer disabled is not a bar to relief. *See* Dkt. No. 69, at 1-5. Plaintiffs also appealed from Magistrate Judge Homer's order denying them further discovery under Rule 56(f) of the Federal Rules of Civil Procedure. *See id.*

### III. DISCUSSION

**A.     The ADA and RA**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II applies to state inmates. *See Giraldi v. Bd. of Parole*, No. 9:04-CV-877, 2008 WL 907321, *5 (N.D.N.Y. Mar. 31, 2008) (citations omitted). To state a claim under the ADA, an inmate must demonstrate that (1) he is a "qualified individual with a disability;" (2) "he . . . is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his . . . disability;" and (3) the facility that "provides the service, program or activity is a public entity." *See Clarkson v. Coughlin*, 898 F. Supp. 1019, 1037 (S.D.N.Y. 1995) (citations omitted); 42 U.S.C. § 12132.

Similarly, the RA protects any "qualified individual with a disability . . . [from] be[ing] excluded from the participation in, . . . [or] denied the benefits of," any federally funded program "solely by reason of his or her disability. . . ." 29 U.S.C. § 794(a); *see also Clarkson*, 898 F. Supp. at 1037 (noting that "[t]he requirements for stating a claim under the ADA are virtually identical to those under § 504 of the Rehabilitation Act" (citations omitted)); *Robinson v. Burlington County Bd. of Soc. Servs.*, No. 07-2717, 2008 WL 4371765, *6 (D.N.J. Sept. 18,

2008) (stating that, "[g]iven the similar language in the ADA and RA statutes, the analysis under the ADA is the same as the analysis under the RA" (citations omitted)).

As to the first element, a plaintiff is an individual with a qualified disability if "(A) a physical or mental impairment . . . substantially limits one or more major life activities of such individual; (B) [there is] a record of such an impairment; or (C) [the individual is] being regarded as having such an impairment. . . ." 42 U.S.C. § 12102(1)(A)-(C). If a plaintiff fails to identify the specific activity that the impairment limits and fails to allege that the activity constitutes a major life activity, the court must dismiss the ADA claim. *See Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 153-54 (2d Cir. 1998).

"Drug addiction that substantially limits one or more major life activities is a recognized disability under the ADA." *Thompson v. Davis*, 295 F.3d 890, 896 (9th Cir. 2002) (citing 28 C.F.R. § 35.104 (2000)). Although the term "qualified individual with a disability" does not include individuals who are currently engaging in illegal drug use, "the ADA does protect individuals who have successfully completed or are participating in a supervised drug rehabilitation program. . . ." *Id.* Even if a plaintiff has a history of drug addiction, however, the statutory language "does not categorically bar a state parole board from making an individualized assessment of the future dangerousness of an inmate by taking into account the inmate's disability." *See id.* at 898 n.4. The only action that is strictly prohibited is "categorically exclud[ing] a class of disabled people from consideration for parole because of their disabilities." *Id.* at 898 (footnote omitted).

This view is premised on the fact that a history of drug use often "leads one to a propensity to commit crime[s] . . . [which is] relevant in assessing whether that individual is

qualified for parole." *Id.* at n.4. Thus, a "parole board . . . does have legitimate penological interests in considering . . . substance abuse backgrounds during the individualized inquiry for parole suitability," and inmates are only guaranteed the right to "an individualized assessment of the threat they pose to the community . . . ." *Id.*

Plaintiffs are correct in asserting that the term "solely" has been omitted from the language of the ADA and that the Second Circuit allows for a "mixed-motive" analysis to determine if impermissible discrimination occurred in employment discrimination matters. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 336-37 (2d Cir. 2000). However, this does not change the Court's conclusion that dismissal in this case is appropriate. In *Farid v. Bouey*, 554 F. Supp. 2d 301 (N.D.N.Y. 2008), the court held that, under the APA and RA, it is entirely appropriate for the parole board to factor the plaintiff's alleged disability into its parole decision. *See id.* at 327 (citing *Mitchell v. Metrish*, No. 04-CV-72411, 2005 WL 2397031, *6 (E.D. Mich. Sept. 28, 2005) (rejecting claims under Title II of the ADA and the Rehabilitation Act articulated in petitioner's habeas corpus application where parole board considered petitioner's prior substance abuse, in addition to a variety of other factors, including the nature of the crime, in denying him parole); *Prater v. Caruso*, No. 05-cv-105, 2006 WL 2882350, at *1 (W.D. Mich. Oct. 5, 2006) (determining that where a parole board has considered many factors, including the nature of the crime and the prisoner's attitude toward the crime, and concluded that a prisoner is not qualified for parole, he or she is not considered a "qualified individual" under the ADA or the Rehabilitation Act)).

First, Plaintiffs have both admitted that it was possible that Defendant denied their applications for parole because of the heinous nature of their crimes. *See* Geraldi Tr. at 37, 39;

Pilbeam Tr. at 35, 47, 51. Second, although Defendant did ask questions regarding the nature and extent of Plaintiffs' drug use, it focused primarily on the nature of their crimes in denying parole. *See* Dkt. No. 58-8 at 20; Dkt. 58-10 at 9; Dkt. No. 58-12 at 9; Dkt. No. 58-14 at 14; Dkt. No. 58-16 at 29; Dkt. No. 58-22 at 12; Dkt. No. 58-24 at 8. Further, discussion of Plaintiffs' drug history was relevant because Plaintiffs committed their crimes while using drugs or in order to obtain drugs and because of their continued drug use once in prison. *See* Dkt. No. 58-7 at 9; Dkt. No. 58-14 at 14.

In addition, Plaintiffs have failed to prove all of the essential elements of a claim under the ADA. As the Supreme Court noted in *Sutton v. United Air Lines*, "[b]ecause the phrase 'substantially limits' appears in the [ADA] in the present indicative verb form, we think the language is properly read as requiring that a person be presently – not potentially or hypothetically – substantially limited in order to demonstrate a disability." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482-83 (1999).[2] The Court added that "a person whose physical or

---

[2] The Court notes that in the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, Congress expressly rejected certain holdings of the Supreme Court in *Sutton*. In *Sutton*, the Court "narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect" and caused "lower courts [to] incorrectly [find] in individual cases that people with a range of substantially limiting impairments are not people with disabilities." Pub. L. No. 110-325, § (a)(4), (5), & (6). Nevertheless, the express language of the ADA Amendments Act of 2008 directed that these amendments would not take effect until January 9, 2009. *Id.* § 8. Generally, a statute is not given retroactive effect "unless such construction is required by explicit language or by necessary implication." *Fernandez-Vargas v. Gonzalez*, 548 U.S. 30, 37 (2006). No such language exists here and every court that has addressed this issue has concluded that courts cannot apply the 2008 Amendments retroactively to conduct that preceded its effective date. *See Young v. Precision Metal Prods., Inc.*, 599 F. Supp. 2d 216, 223-24 (D. Conn. 2009) (citing cases). Accordingly, as Plaintiffs' cause of action arose prior to the effective date of the Amendments, the Supreme Court's holding in *Sutton* applies to this matter.

mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not 'substantially limit' a major life activity." *Id.*

Plaintiffs' allegations make clear that any "disability" they had as a result of drug addiction was in the past. Plaintiff Giraldi states that he successfully completed a drug rehabilitation program and that he obtained an advanced degree while in prison. *See* Amended Complaint at ¶ 12. He further asserts that state mental health experts have repeatedly examined him and that each "conclud[ed] that Giraldi has no current mental illness and is not violent or dangerous." *See id.* at ¶ 11; Geraldi Tr. at 25-26. He further testified that he was able to perform daily tasks, learn, communicate, ambulate, and that he is self-sufficient. *See* Giraldi Tr. at 26-27. Plaintiff Pilbeam alleges the same, including that he obtained a masters degree while in prison. *See* Amended Complaint at ¶ 28.

Although Plaintiffs may have been considered "disabled" for purposes of the ADA and RA at some point, it is clear that they no longer suffer from such disabilities. *See Ragusa v. Malverne Union Free Sch. Dist.*, 582 F. Supp. 2d 326, 342 (E.D.N.Y. 2008) (holding that "an individual who is able to virtually eliminate the effects of an impairment through medication is not considered disabled for purposes of the ADA" (citations omitted)); *McNamara v. Tourneau, Inc.*, 496 F. Supp. 2d 366, 375 (S.D.N.Y. 2007) (holding that "[t]emporary conditions do not constitute disabilities under the ADA and other statutes" (citations omitted)); *Horwitz v. L & J.G. Stickley, Inc.*, 122 F. Supp. 2d 350, 355 (N.D.N.Y. 2000) (finding that plaintiff with bipolar disorder who was medicated was not disabled within meaning of ADA, even though her disability was "expected to continue indefinitely and she will be required to take medication and undergo therapy for the rest of her life," because, despite the disease, she was "stable and fully

functional" and the disease did "not substantially interfere with her major life activities"), *aff'd*, 20 Fed. Appx. 76 (2d Cir. 2001). Based on Plaintiffs' own testimony and their record of performance while incarcerated, Plaintiffs cannot establish that their past drug use or mental illness substantially limits a major life activity today.

Further, in order to prevail under these statutes, a plaintiff must prove more than that the defendant regarded that individual as somehow disabled; rather the plaintiff "must adduce evidence that Defendant regarded him as having an impairment that substantially limited a major life activity." *Roberts v. New York State Dep't of Corr. Servs.*, 63 F. Supp. 2d 272, 288 (W.D.N.Y. 1999) (citation omitted). As Plaintiffs' testimony demonstrates, they are not alleging that Defendant regarded them as having an impairment that substantially limited their ability to perform a major life activity; they merely assert that Defendant saw them as having a disability. *See* Gialdi Tr. at 34-37; Pilbeam Tr. at 31-33.[3]

Moreover, a plaintiff must prove that the impairment limits his ability to perform a major life activity. *See Ragusa*, 582 F. Supp. 2d at 341. Major life activities include walking, hearing, seeing, speaking, working, caring for oneself, performing manual tasks, breathing, and learning. *See id.* (citing 29 C.F.R. § 1630.2(i)). Plaintiffs have failed to allege that their alleged disability limits any major life activity. In fact, their testimony and pleadings would contradict any such assertion, as they have both alleged that they received advanced degrees and that they are able to

---

[3] Although Plaintiff Pilbeam claimed in his deposition that there is a "possibility" that Defendant believed that he would not be able to groom himself, keep his house clean, or learn if released from prison, he was not able to cite to any specific statement to support this belief. Such bald assertions, conclusory statements, and speculation are insufficient to defeat a motion for summary judgment. *See Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996).

attend to their daily hygiene, perform tasks, learn, ambulate, and communicate. *See* Giraldi Tr. at 26-27; Pilbeam Tr. at 19-20.

The law is clear that Plaintiffs do not meet the definition of "disability" under the ADA or RA. Further, even if Plaintiffs did meet this definition, it is clear that Defendant's reasons for denying Plaintiffs' parole applications were not impermissibly based on this "disability." Defendant clearly relied on the heinous nature of each crime committed and only mentioned Plaintiffs' drug use to the extent Plaintiffs made such inquiries relevant. Based on the foregoing, the Court finds that Magistrate Judge Homer properly recommended dismissal of this action.

**B.     Rule 56(f) relief**

Plaintiffs filed a motion to compel on August 5, 2008, which Magistrate Judge Homer granted in part and denied in part on October 16, 2008. *See* Dkt. Nos. 38, 53. Defendant complied, and Plaintiffs did not object to the October 16, 2008 Order or to the discovery that Defendant provided. On February 24, 2009, Defendant filed its motion for summary judgment. *See* Dkt. No. 58. When Plaintiffs initially failed to respond, the Court granted them an extension *sua sponte*. Plaintiffs then filed a response seeking a postponement of the motion and an extension of the discovery deadline. *See* Dkt. No. 63.

Pursuant to the Federal Rules, "[i]f a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . order a continuance to enable . . . [further] discovery. . . ." Fed. R. Civ. P. 56(f). In order to receive this relief, the party seeking relief must file an affidavit indicating "(1) what facts are sought and how they are to be obtained; (2) how these facts are

reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 505 (N.D.N.Y. 2009) (citations omitted).

Plaintiffs claim that they are entitled to this relief because the discovery that they seek is relevant and will likely yield dispositive information. *See* Dkt. No. 69 at 2. Plaintiffs, however, have failed to demonstrate any of the requirements for such relief. They make only general and conclusory allegations in their affidavit, failing to identify what facts they seek aside from vague requests for "all records, documents and files concerning parole release policy, standards, and rules in general, as well as all records, documents and files concerning plaintiffs' consideration for participation in defendant's parole release program." *See* Dkt. No. 63 at ¶ 13. Such statements represent, at best, a "'mere hope' that further evidence may develop to create a genuine issue of fact . . .," and such statements are "an insufficient basis upon which to justify such a stay." *Cusamano*, 604 F. Supp. 2d at 505 (citing *Contemporary Mission, Inc. v. USPS*, 648 F.2d 97, 107 (2d Cir. 1981)) (other citations omitted).

### III. CONCLUSION

After carefully considering Magistrate Judge Homer's Report-Recommendation, Plaintiffs' objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Homer's July 20, 2009 Report-Recommendation is **ADOPTED** in its entirety; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **GRANTED**; and the Court

further

    **ORDERS** that Plaintiffs' motion for Rule 56(f) relief is **DENIED**; and the Court further

    **ORDERS** that the Clerk of the Court shall enter judgment for Defendant and close this case.

**IT IS SO ORDERED.**

Dated: September 30, 2009
       Syracuse, New York

                                              Frederick J. Scullin, Jr.
                                              Senior United States District Court Judge